## No. 1943
## Second Circuit Appeal

---

## PRIMUS SMITH ET AL. v. A. B. WILLIAMS

---

(March 30, 1925, Opinion and Decree)

---

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Pleading—Par. 114.**

Where allegations are made that at the time of filing of suit in which defendants were represented by a curator ad hoc they were non-residents of the parish where suit was filed and that they had no knowledge of the issuance of the fi. fa. or the advertisement or sale of their property, and that they were not notified of the suit or proceedings by the curator ad hoc, these allegations are sufficient pleading to enable them to prove that less than one year has elapsed since they were notified of the proceedings.

(Code, of Practice, Art. 613. Editor's note.)

2. **Louisiana Digest—Pleading—Par. 63, 114.**

A plea of prescription filed against a petition asking that a judgment be declared null will not be sustained, even though the petition does not state the exact date the fraud was discovered, if it states sufficient to enable plaintiff to prove that date on the trial.

(Code of Practice, Art. 613. Editor's note.)

3. **Louisiana Digest—Pleading—Par. 63; Judgment—Par. 167.**

A plea of res adjudicata will not be sustained where the judgment which is plead is a nullity.

4. **Louisiana Digest—Pleading—Par. 62.**

An exception no cause of action will not be sustained where allegations of petition show sufficient to prove the exact time of notification, although that time is not stated in the petition.

Appeal from Eleventh Judicial District Court of Louisiana, Parish of Natchitoches, Hon. J. W. Jones, Jr., Judge.

This is a suit to annul a judgment.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Rusca & Cunningham, of Natchitoches, attorneys for plaintiffs, appellants.

M. L. Dismuskes, of Natchitoches, attorney for defendant, appellee.

ODOM, J. Plaintiffs brought this suit to annul a judgment rendered in the Eleventh Judicial District Court of Louisiana for the parish of Natchitoches on July 16, 1921. The present suit was filed in the same court on July 27, 1922, and service was made on defendant through a curator *ad hoc* on the following day—one year and twelve days after the signing of the said judgment.

Plaintiffs' suit sets up, in substance, that they are defendants in the suit entitled A. B. Wiliams versus A. B. Smith, et al. No. 16600 on the docket of the Eleventh Judicial District Court of Louisiana for the parish of Natchitoches, and that on the 16th day of July, 1921, a judgment was rendered against them and their father, A. B. Smith, for certain sums of money fully set out in the judgment which is copied in the petition; and they aver that said judgment should be annulled on the following grounds:

1. That said suit was a preceeding in personal action against absent defendants and minor, all of whom were represented by a curator *ad hoc* unaccompanied by attachment of their property.

2. That the plaintiff in that suit, A. B. Williams, was not the holder or owner of the note sued on; that he was a relative of the defendant and advanced to them, as a loan, the sum of $135.00 and that other relatives advanced enough additional to pay the debt which was made the basis of said suit; and that the note evidencing said debt was paid.

3. That a house and lot which was owned by defendant in that suit was turned over to said A. B. Williams, the plaintiff therein, in order that he might collect rents and revenues therefrom sufficient to repay the amount which he had loaned them, and that he did collect more than $270.00 in rent, and in addition thereto took possession of certain personal property, all of which he appropriated to his own use and benefit long before he filed said suit.

4. That the said proceedings were fraudulent and that the acts done by the said A. B. Williams, plaintiff in that suit, were done in fraud of their rights and for the purpose of defrauding them of their inheritance.

And they especially allege that they were not notified of the said suit by the curator *ad hoc*, or any one else and that they were ignorant of the said suit, said judgment and of the writ of fi. fa. and the advertisement and sale of their house and lot and of the personal property.

Defendant tendered an exception of no cause and no right of action on November 4, 1922, and on the same day filed a plea of *res adjudicata*.

In this court he files a plea of prescription of one year to the action to annul.

The lower court sustained the exception of no cause of action and no right of action as well as the plea of *res adjudicata* and dismissed plaintiffs' suit; from which judgment they appeal.

## OPINION.

Article 607 of the Code of Practice provides that a definitive judgment may be annulled in all cases where it appears that it has been obtained through fraud or other ill practices on the part of the party in whose favor it was rendered.

We think plaintiffs' petition sets out a cause of action. If the plaintiff in the suit of Williams versus Smith, in which judgment the judgment against the defendants, plaintiffs in this suit, did what he is alleged to have done in order to obtain that judgment, it is unthinkable that he should now be permitted to profit thereby.

It is alleged that he is a kinsman of the plaintiffs and that when their ancestor became embarrassed financially he with other relatives contributed money as a loan to pay the note which he later claimed to own and which was made the basis of the suit; and not only that, they allege that he took over the property which they own and collected rents far in excess of the sum which he had loaned them to pay the note, and that he took over a lot of personal property all of which he appropriated to his own use and benefit without accounting to them therefor. In other words, that the debt alleged to be the basis of the suit had been paid. All of which, petitioners allege, was done in fraud and with intent to defraud them of their enheritance. If proof of such conduct on the part of the plaintiff in that suit had been made on the trial of the case, it is needless to say that his demand would have been rejected, but the court was not informed of those conditions which according to the allegations of plaintiffs' petition existed. The court's attention is now called to them by the plaintiffs in an application to annul the judgment, and unless the plaintiffs are cut off by some law or equitable rule of property their complaint should and will of course be heard.

Our brother of the District Court did not commit his reasons for judgment to writing and we are not informed as to his reasons for sustaining the exception of no cause of action; but counsel for defendant in his brief says:

"In actions for nullity of judgment on ground of fraud, plaintiff must negative prescription of one year as is provided by Article 613 of the Code of Practice."

"He must allege when he discovered the fraud, what it was, how it was made, and why it was not made sooner."

And he cites in support of this assertion: Succession of Dauphin, 112 La. 137-143, 36 South. 287.

Article 613 of the Code of Practice provides that when a judgment has been obtained through fraud on the part of the plaintiff the action for annulling such judgment must be brought within one year after the fraud has been discovered.

The suit to annul in this case was filed one year and eleven days after the signing of the judgment sought to be annulled; and if it be assumed that the plaintiffs had knowledge thereof on the day the judgment was rendered, their action to annul is barred if they are all residents of this state.

It is defendant's contention, as we understand it, and we think probably the Judge of the lower court must have been of that view, that the pleader should have set forth the date on which knowledge of the judgment came to them and why the suit was not filed sooner; and counsel cites succession of Dauphin, *supra*, where the court siad:

"The right of action to annul a judgment for fraud is not unconditional or perpetual; it is subordinated to the condition that the action 'must be brought within the year after the fraud has been discovered'. Code Practice Art. 613. And the burden of proof is on the plaintiffs in nullity to show when the knowledge of the fraud was acquired. Expressly so held in Farrar vs. Peyroux, 7 Rob. 92; Wheat vs. Union Bank, 7 Rob.. 94. And such information as ought to put the plaintiff on inquiry will suffice to start the course of the prescription."

On this subject of the duty of the plaintiff in nullity to allege and prove the time and circumstances of the discovery of the

fraud complained of, the following somewhat extended excerpt from the decision of the Supreme Court of the United States in the case of Wood vs. Carpenter, 101 U. S., 135; 25 L. Ed. 807, furnishes a full and satisfactory statement of the law. And it is of safe application in this state, since, in administering relief from fraud, our courts exercise the same jurisdiction as ordinary courts of equity, and, in the absence of special statutory regulations, ought to be guided by the same principles; and we have no special statutory regulations on the subject, the Code of Practice contenting itself with giving the action and limiting it to one year from the discovery of the fraud. And our court has made use of the following quotation taken from page 140 of the decision of the United States Supreme Court cited *supra*.

"In this class of cases the plaintiff is held to stringent rules of pleading and evidence, and especially must there 'be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether, by ordinary diligence, the discovery might not have been before made'."

Counsel for defendant relies upon this decision as authority for the proposition which he makes that it is necessary for the pleader under the rules of practice and pleading prevailing in this state to allege the time of the discovery of the fraud. In other words, to negative prescription.

But a careful reading of this case shows that it is fatal to his contention, and that the point which is stressed by the court is not that the plaintiff must allege the time when he became acquainted with the fact of the judgment and the reason why the suit was not brought sooner but that such facts must be proven on the trial of the case, the burden of which proof rests upon the plaintiff. For on page 142 our court says:

"Thus it is seen that the burden of proof is on the plaintiffs in nullity to show at what date the discovery of the fraud was made; and it is seen also that such information as ought to put the plaintiff on inquiry is sufficient to start the running of the prescripition; and it is seen further that in this class of cases the plaintiff is held to 'stringent rules of pleading and evidence'."

This stringency as to *pleading* does not obtain under our system of practice. Under our loose system of pleading, the mere negativing in general terms of the presumption which would otherwise arise from a comparision of dates—of the date of the judgment sought to be annulled and of the date of the filing of the suit in nullity—would be sufficient. But there is no reason why the same stringency as to evidence should not obtain in our courts as in ordinary courts of equity, or in the courts of law, which, like ours, administer equitable relief against fraud; and therefore, when it comes to the evidence, to borrow the language of the court in this case of Wood vs. Carpenter, "a general allegation of ignorance at one time and of knowledge at another is of no effect. If the plaintiff made any particular discovery, it should be stated when it was made, what it was, how it was made, and why it was not made sooner".

A careful reading of this decision will disclose that it is not authority for holding that it is incumbent upon the plaintiff to negative prescription, but it is unquestionably authority for holding that the burden is upon the plaintiff in order to make out his case to establish the facts that knowledge of the fraud was made known to him within a year previous to the bringing of the action.

The petition in this case does not set forth that the plaintiffs were made ac-

·quainted with the facts which they use as a basis for their suit to set aside this judgment within a year previous to the filing of the suit, but it is perfectly evident from a· reading of the petition that they could not have known of the suit and the rendition of the judgment within the year. It is alleged, for instance, that at the time of the filing of the suit and of the rendition of the judgment one of the present plaintiffs was a minor in the city of New Orleans; that two of them were residents of the state of Louisiana in ·a parish other than Natchitoches and that they were at that time temporarily absent from the state ·of Louisiana; and that one of the plaintiffs was an absentee in the state of Oklahoma and that another was an absentee living in the state of Virginia. And it is further alleged that they had no knowledge of the issuance of the fi. fa. or the advertisement or sale of the property which they claim to own; and they further allege that the curator ad hoc appointed to represent them and on whom service was made did not notify them of any of the proceedings.

It would therefore seem that the idea that these plaintiffs could have obtained knowledge of the rendition of this judgment within eleven days after it was signed is negatived in the strongest manner possible. In other words, while it is true that there is no direct allegation that the plaintiffs did not have knowledge of the facts which they now set up in their petition within a ·year from the rendition of the judgment, yet a reading of the petition necessarily leads to the conclusion that they could not have had such knowledge.

We do not think it necessary under the circumstances of this case, taking the pleadings as a whole, to negative prescription.

·"It is a general principle that a pleading need not ·and should not by its aver-.

ments anticipate a defence thereto and negative or avoid it."

31 Cyc. 109.

See, also, Lafourche Transportation Co. vs. Pugh, 52 La. Ann. 1517, 27 South. 958.

Mathews vs. Pascal, 13 La. 47; West vs. McConnell, 5 La. 424.

The defendant also tendered a plea of *res adjudicata*, which was sustained by the lower court.

According to the view which we take, this plea should not have been sustained, because of the judgment which is plead as *res adjudicata* is a nullity, and it may be, certainly it cannot be made the basis of this plea. We think that this plea should be referred to the merits on the trial of the case.

The defendant, as stated, had interposed a plea of prescription of one year in this court and in support of the same he sets out that the facts which are made the basis of plaintiffs' suit to annul the judgment were known to them long prior to the institution of the original suit by Williams against them. There is no way that the court can know that the pleader's assertion to that effect is true. Under our view, any plea of prescription which defendant desires to interpose in· this case should be filed in the lower court and referred to the merits so that all the facts in connection with the matter may be inquired into.

Under these views it is unnecessary for us to pass upon the question as to whether judgment could be obtained against the defendants by substituted service as in this case.

For the reasons assigned, it is therefore ordered, adjudged and decreed ·that the judgment appealed from be avoided, and reversed; that the exception of no cause of action be overruled; that the plea of *res adjudicata* be referred to the merits in the District Court; that the plea of prescrip-

tion filed in this court be overruled; and that this case be reinstated on the docket of the Tenth Judicial District Court of Louisiana, formerly the Eleventh Judicial District Court, for the parish of Natchitoches to be there proceeded with according to law.